# Supreme Court of Texas

No. 24-1078

Ken Paxton, Attorney General of Texas,

*Petitioner*,

v.

The City of Austin and Austin Transit Partnership Local Government Corporation,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fifteenth District of Texas

**Argued February 10, 2026**

CHIEF JUSTICE BLACKLOCK delivered the opinion of the Court.

Justice Sullivan did not participate in the decision.

The Legislature has authorized an "appeal from an interlocutory order" that "grants or denies a plea to the jurisdiction by a governmental unit." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). In this suit challenging the issuance of municipal bonds, the State filed a plea to the jurisdiction and urged the district court to grant or deny it, which would have triggered an interlocutory appeal. At opposing counsel's

suggestion, however, the court declined to rule on the State's plea, instead proceeding toward resolution of the merits without resolving the State's challenge to its power to do so. The record indicates this approach was a deliberate effort to frustrate the State's appellate rights. The State then brought an interlocutory appeal despite the lack of an order granting or denying its plea to the jurisdiction.

Nothing about this scenario is as it should be. A court may not decline to rule on challenges to its jurisdiction, which should always be addressed before proceeding to the merits. A court may not withhold a ruling on the government's properly presented plea to the jurisdiction in order to prevent the government from appealing. And the government may not appeal from an interlocutory order that does not exist. The question presented is what to do about all this.

Because there is no order from which the State can appeal, the court of appeals was not wrong to conclude it lacked appellate jurisdiction. However, the State asks in the alternative that we treat its appeal as a petition for a writ of mandamus, which we will do. As a general rule, mandamus relief should readily be granted when the government's right to interlocutory appeal is frustrated by a trial court's refusal to rule on a plea to the jurisdiction. In addition, if a governmental unit brings a premature interlocutory appeal complaining of the trial court's refusal to rule on a plea to the jurisdiction, a court of appeals may abate the appeal and direct the trial court to rule on the plea in order to secure appellate jurisdiction. Under no circumstances may a court deny a governmental unit its interlocutory appellate rights by declining to resolve a properly presented jurisdictional challenge.

Construing the State's petition for review as a petition for writ of mandamus, we conditionally grant relief and direct the trial court to rule on the plea to the jurisdiction. We express no view on the State's jurisdictional arguments.

## I.

In 2020, the City of Austin approved a "light rail" plan, and Austin voters approved a ballot measure to raise property taxes for this purpose. The City formed a corporation called Austin Transit Partnership (ATP) to implement the project. ATP, not the City, would issue the necessary bonds.

A group of taxpayers sued to stop ATP's bond issuance. In response, the City and ATP filed a petition under the Expedited Declaratory Judgment Act (EDJA), TEX. GOV'T CODE §§ 1205.001–.152, seeking declarations that they may assess and spend taxes to implement Project Connect and that ATP may issue bonds to fund the project. The taxpayers' suit was consolidated with the EDJA action.

The Attorney General—who has a statutory right to participate in EDJA cases, *id.* §§ 1205.041(b), .042, .063—answered and filed a plea to the jurisdiction, arguing that neither the City nor ATP qualifies as an "issuer" under the EDJA. The Attorney General contends that while the City could meet EDJA's definition of "issuer," it did not issue the relevant bonds; and while ATP issued the bonds, a local-government corporation does not qualify as an "issuer."

Naturally, the City and ATP hoped to resolve the litigation in their favor as quickly as possible so the project could proceed. On the other side, the taxpayers and the Attorney General had every incentive

3

to cause delay. Under the interlocutory-appeal statute, a governmental unit may immediately appeal an "order" that "grants or denies a plea to the jurisdiction," and such an appeal automatically stays all proceedings in the trial court. TEX. CIV. PRAC. & REM. CODE §§ 51.014(a)(8), (b). These features of the interlocutory-appeal statute, combined with the parties' dueling incentives for speed versus delay, prompted the following exchange between the district court and ATP's counsel at a hearing on the State's plea to the jurisdiction:

> [COUNSEL]: If you deny the plea [to the jurisdiction] tomorrow this case gets put on ice because they have an interlocutory appeal that they will file and under that statute it says that the whole proceeding is abated.
>
> THE COURT: So what are you asking me to do?
>
> [COUNSEL]: I'm asking you to take it under advisement . . . .
>
> THE COURT: So you're asking me to not deny [the plea to the jurisdiction], but to take it under advisement and allow the trial to move forward and decide at trial whether or not they are correct about the merits-based issue that you're dealing with?
>
> . . . .
>
> I keep repeating it because it's a little odd to say please take this under advisement; shocking really.

In other words, ATP's counsel warned the court that any ruling on the plea would trigger an interlocutory appeal and automatic stay, delaying the expedited proceedings. The solution, counsel urged, was for the court to skip the jurisdictional question and proceed to trial, depriving the State of an order from which to appeal and thereby obtain the statutory stay. The court understandably found this suggestion

4

"shocking," at least initially, but counsel assured the court that other judges had done the same thing. *See* 3Supp.RR26–27 ("[T]his happened in a previous case in Travis County and . . . . [the judge] chose to carry that to trial and . . . then rule on that issue then because she understood that if she granted or denied the plea the merits would never be reached . . . ."). Despite its reservations, the court adopted counsel's approach, ending the hearing without "making a ruling one way or another" and "taking [the plea] under advisement" to see if "what happens at trial informs" its decision.

On the morning of trial, the State again pressed for a ruling. The court responded that it had not "explicitly ruled for or against" the plea and, though it "kept hearing the word implicit," had not implicitly ruled either. The court then announced it was calling the case to trial. The Attorney General noticed an interlocutory appeal under section 51.014(a)(8), contending that the court implicitly denied the plea by proceeding to trial. After the notice of appeal, the court reiterated that it had "steadfastly" and "explicitly" not ruled on the plea but still abated the case.

The court of appeals dismissed the appeal for lack of appellate jurisdiction because there was no appealable interlocutory order under section 51.014(a)(8). 722 S.W.3d 50, 53–54 (Tex. App.—15th Dist. 2024).

## II.

## A.

Subject-matter jurisdiction is "essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). It is never presumed, cannot be waived, and may

be raised at any time. *Id.* at 443–44; *see also Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008). A court "must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). There is no discretion to ignore or side-step this obligation, and a court "may not move to the merits if even one jurisdictional argument remains unresolved." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 869 (Tex. 2023).

The approach taken below ran afoul of these basic principles. Proceeding to trial without first resolving the State's challenge to the court's authority to do so was an abuse of the district court's otherwise broad discretion to manage the progress of the case. The City and ATP contend that the State's argument about who qualifies as an "issuer" is in truth a merits argument, not a jurisdictional one, so no interlocutory appeal should be available. This is incorrect—not because the State is right that its argument is a jurisdictional one (we express no view on that question), but because the State's position is that its argument is a jurisdictional one. If the trial court disagrees with that, the Legislature has authorized the State to pause the case to ask an appellate court who is right. The whole point of section 51.014(a)(8) is that a trial court's disagreement with a governmental unit's jurisdictional argument is not enough to get a case involving the government to a trial on the merits.

6

The government gets to ask an appellate court first, and the case cannot proceed until it has done so.[1]

The City and ATP rightly point out that the automatic stay associated with the State's interlocutory appeal may frustrate the ostensible purpose of the *Expedited* Declaratory Judgment Act, which is to speedily pass judgment on the legality of public debt. This is not an immaterial concern. In the EDJA context and in others as well, the possibility for section 51.014(a)(8) to become a tool of governmental gamesmanship causing undue delay cannot be ignored. The solution, however, is not to pocket-veto the government's jurisdictional arguments. Right or wrong, the State insists that the district court lacks jurisdiction under the EDJA because neither the City nor ATP is a genuine "issuer." And right or wrong, the Legislature has given the State the option of testing this argument on appeal before the case

---

[1] Appellate courts, including this one, frequently resolve appeals of jurisdictional pleas by a determination that the moving party's argument goes to the merits, not to jurisdiction. *See, e.g.*, *Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 909 (Tex. 2024) (affirming trial court's denial of pleas to the jurisdiction because the asserted preclusion defense was not jurisdictional); *City of Houston v. Aptim Env't & Infrastructure, LLC*, 693 S.W.3d 819, 824–25 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (affirming denial of plea to the jurisdiction because contractual-execution challenge went to the merits, not jurisdiction); *Romulus Grp., Inc. v. City of Dallas*, No. 05-16-00088-CV, 2017 WL 1684631, at *5–6 (Tex. App.—Dallas May 2, 2017, pet. denied) (reversing grant of plea to the jurisdiction because statutory challenge was an affirmative defense going to the merits, not jurisdiction); *City of Houston v. Estrada*, No. 14-08-00900-CV, 2009 WL 783361, at *2–4 (Tex. App.—Houston [14th Dist.] Mar. 26, 2009, no pet.) (affirming denial of a plea to the jurisdiction because the city's statutory-capacity challenge went to the merits, not jurisdiction). A trial court cannot deny the government an interlocutory appeal by deciding for itself that the argument is non-jurisdictional or by ignoring the argument altogether.

proceeds further. If the State is wrong (either because the lack of an "issuer" is a non-jurisdictional merits problem or because there is no lack of an "issuer"), the solution is to deny the State's plea to the jurisdiction as quickly as possible so the appellate process can begin.

Some delay associated with the interlocutory appeal and the automatic stay is of course inevitable. The Legislature has made that choice, and the judiciary will honor it. Yet the courts are not without mitigating tools. Appellate courts are perfectly capable of acting quickly on motions to expedite an interlocutory appeal if the delay occasioned by the automatic stay threatens real harm. And courts at all levels are empowered to impose appropriate sanctions on any party, including the government, that wastes the resources of the courts and opposing parties with frivolous or bad faith arguments. Courts are not empowered, however, to deny the government its statutory appellate rights, which are part of the deal the Legislature made when it consented to the courts' exercise of jurisdiction over the government in the first place. In many instances (although perhaps not the one before us today), the extraordinary rights granted to the government by section 51.014(a)(8) are essentially conditions on the legislative consent to suit without which the litigation cannot proceed at all. Bypassing those rights for the sake of judicial efficiency is thus more than a garden-variety procedural error. By violating the conditions under which the sovereign has agreed to submit to the courts' jurisdiction, a court commits the very sort of error section 51.014(a)(8) guards against.

Again, we recognize that this framework is not immune from strategic exploitation. A governmental unit intent on delay may file a

plea to the jurisdiction for just that purpose, secure in the knowledge that even a denial will trigger an automatic stay pending interlocutory appeal. The potential for abuse is real, and appellate courts confronted with such appeals should resolve them with the dispatch the circumstances demand, particularly in expedited proceedings where delay is most costly. But until the Legislature decides otherwise, swift resolution on appeal coupled with the possibility of sanctions in egregious instances—not a trial court's strategic refusal to rule—are the procedurally proper safeguards against abuse.

**B.**

The State's notice of appeal contended that the district court implicitly denied the plea to the jurisdiction "by calling the matter to trial on the merits." On this theory, a court's decision to proceed to trial over a jurisdictional objection is itself the "order" that "denies" the plea. The court of appeals rejected that theory. 722 S.W.3d at 53–54. So do we.

The plain meaning of the words "order of a district court" that "grants or denies a plea to the jurisdiction" does not include a situation where the district court (1) issues no order and (2) "steadfastly" and "explicitly" refuses to grant or deny the plea. The district court here did not implicitly rule on the plea; it explicitly refused to rule at all. It stressed that it had neither "explicitly" nor "implicit[ly]" ruled on the plea. And under the statute's plain terms, if there is no order, there can be no appeal—even if the absence of an order is calculated to frustrate the government's appellate rights. A court's refusal to grant or deny a plea to the jurisdiction, even if erroneous and improperly motivated,

9

simply is not an "order of a district court" that "grants or denies a plea to the jurisdiction."

Nor does precedent indicate otherwise. The State relies on *Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006), in which the government challenged subject-matter jurisdiction alongside the merits in a motion for summary judgment, *id.* at 337. The court granted partial summary judgment on the merits against the governmental unit without addressing the jurisdictional issue. *Id.* This Court held that "[b]y *ruling* on the merits . . . the trial court necessarily denied [the] challenge to the court's jurisdiction." *Id.* at 340 (emphasis added).

Three distinctions are readily apparent. First, in *Thomas* there was a written and signed order on a motion that, while not styled as a plea to the jurisdiction, nevertheless contained a jurisdictional challenge. Second, there was no comparable statement from the district court in *Thomas* that it was not ruling on the jurisdictional issue. Third, in *Thomas* there was a ruling on the merits, which we held necessarily entailed a rejection of jurisdictional impediments to that ruling. There was thus nothing in *Thomas* to negate the natural inference that the court had in fact considered and rejected the jurisdictional challenge before making a merits ruling. Here, that inference is impossible to sustain: the court "steadfastly" maintained that it was not granting or denying the plea, either explicitly or implicitly. There is no ruling on the merits, and there is no ruling on jurisdiction. There is only a "steadfast" and "explicit" refusal to rule.

Even if *Thomas* were more like this case, it would not trump section 51.014(a)(8)'s text. There is no escaping the definitional defect

in the State's position: A district court's refusal to issue an order granting or denying a plea to the jurisdiction is not an "order of a district court" that "grants or denies a plea to the jurisdiction." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). To be sure, a court's refusal to render an order may function as a denial in practice. But the statute requires an "order," not a functional equivalent. In theory, perhaps, we could "deem" a non-order to be an order, just as we could deem black to be white or up to be down, were we so inclined. That would not make it so. The remedy for a trial court's refusal to address jurisdiction is not for an appellate court to exceed its own.

## C.

Rather than manufacture appellate jurisdiction in the absence of an order, we conclude that mandamus is an appropriate remedy when a trial court's improper refusal to rule on a governmental unit's jurisdictional argument deprives a litigant of its right to interlocutory review. "Mandamus relief is appropriate when a petitioner demonstrates a clear abuse of discretion and has no adequate remedy by appeal." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 91 (Tex. 2019). Both elements are satisfied here.

First, as discussed above, a trial court abuses its discretion when it proceeds to the merits despite an unresolved challenge to its authority to do so. *See Rattray*, 662 S.W.3d at 869; *Miranda*, 133 S.W.3d at 226. A court's duty to resolve challenges to its authority before exercising that authority does not yield to the court's sense of what would be more convenient or efficient. Nor does it turn on the court's assessment of the challenger's motive. It may sometimes appear that a jurisdictional

11

challenge is aimed more at delay than at a genuine question about the court's power. But a jurisdictional challenge either has merit or it doesn't, and that question does not change with the challenger's reasons for raising it. If the plea lacks merit, the court's task is no different than with any other losing argument: deny it, and let the chips fall where they may. That the Legislature has attached particular consequences to the denial of a governmental unit's plea—an interlocutory appeal and an automatic stay—does not alter the analysis. Those consequences are not the trial court's to weigh, and they are certainly not its to circumvent.

Second, there is no adequate remedy by appeal when a court's refusal to rule deprives a governmental unit of its statutory right to interlocutory review of jurisdictional determinations. "An appeal is inadequate when it comes too late to correct the court's error without the loss of substantial rights to the complaining party." *In re Kan. City S. Indus.*, 139 S.W.3d 669, 670 (Tex. 2004). In the same vein, mandamus may issue when a court's refusal to rule would defeat a substantial procedural right conferred by statute. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462, 468–69 (Tex. 2008). We have previously recognized that the procedural rights conferred by the interlocutory-appeal statute are substantial and warrant mandamus relief when lost. *See Geomet*, 578 S.W.3d at 90–91.

In this case, the district court's refusal to rule deprived the State of the interlocutory review the Legislature authorized—a right that, once bypassed, no post-judgment appeal can restore. *See City of Galveston v. Gray*, 93 S.W.3d 587, 592 (Tex. App.—Houston [14th Dist.]

12

2002, pet. denied) ("The trial court abused its discretion in refusing to rule on the [governments'] respective pleas to the jurisdiction . . . . Moreover, there is no adequate remedy at law because the [governments] will not be able to avail themselves of their statutory right to an interlocutory appeal."); *In re Bexar Medina Atascosa Cntys. Water Control & Improvement Dist. No. One*, No. 04-24-00538-CV, 2025 WL 466069, at \*5 (Tex. App.—San Antonio Feb. 12, 2025, orig. proceeding) ("[R]elators' right to an accelerated appeal to review the trial court's jurisdictional ruling was impaired [by the trial court's delay in ruling] . . . . For these reasons, we conclude relators' appellate remedy is inadequate." (collecting cases)).

The City and ATP contend that the State delayed too long in requesting mandamus relief, having raised the issue for the first time in its motion for rehearing in the court of appeals. "When this and other Texas appellate courts decide that an appeal or other pleading should have been pursued by mandamus, we do not generally toss out the appeal or require it to be done twice; instead, we treat the improper appeal as a proper mandamus." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 784 (Tex. 2006) (Brister, J., concurring) (collecting cases). And particularly when the correct appellate mechanism is uncertain, we have recognized that a petition for review may be treated as one for mandamus relief. *See CMH Homes v. Perez*, 340 S.W.3d 444, 452–54 (Tex. 2011); *Patel v. Nations Renovations, LLC*, 661 S.W.3d 151, 156 (Tex. 2023); *cf. also In re Renshaw*, 672 S.W.3d 426, 427 (Tex. 2023). Because the substance of any mandamus petition would be the same as the interlocutory appeal here, the City and ATP suffer no prejudice from

13

the timing of the Attorney General's alternative request. To the contrary, all involved are saved time and expense if we decline to require the State to start over with a mandamus petition. We will construe the Attorney General's petition for review as one for mandamus relief and will conditionally grant it.

Finally, we note an additional mechanism that may have been available to the court of appeals and may be available in future cases. Texas Rule of Appellate Procedure 44.4 provides that a court of appeals "must not . . . dismiss an appeal" if "the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals" and "the trial court can correct its action or failure to act." When those conditions are met, the court of appeals should "direct the trial court to correct the error." Rule 27.2, in turn, permits the appellate court to treat actions taken before an "appealable order"—including an interlocutory order—is signed as relating to the appeal of that order. And Rule 43.6 authorizes the court of appeals to "make any other appropriate order that the law and the nature of the case require." Read together, these rules indicate that the court of appeals could have abated the appeal, directed the district court to rule on the plea, and then treated the State's previously filed notice of appeal as an appeal of that order. *Cf. Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205–06 (Tex. 2001) (recognizing that an appellate court may abate under Rule 27.2 to permit trial court clarification rather than dismiss); *McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001). Whether by this mechanism or by mandamus, the Rules of Appellate Procedure do not leave appellate courts with no option other than dismissal when a trial court's

14

improper refusal to rule is the sole obstacle to interlocutory appellate jurisdiction.

### III.

We construe the Attorney General's petition for review as a petition for writ of mandamus and conditionally grant relief directing the district court to rule on the plea to the jurisdiction. The writ will issue only if the court does not do so. The judgment of the court of appeals is undisturbed.

James D. Blacklock
Chief Justice

**OPINION DELIVERED:** May 22, 2026